DAVE BREWER *et al.*, Plaintiffs-Appellees, *v.* CUSTOM BUILDERS CORPORATION, Defendant-Appellant.

Fifth District   No. 75-425

Opinion filed October 4, 1976.—Rehearing denied November 3, 1976.

George D. Johnson, of Deeba, DeStefano, Sauter & Herd, of St. Louis, Missouri, and Roger M. Scrivner, of Listeman, Bandy & Hamilton, of Belleville, for appellant.

G. Edward Moorman, of Smith, Allen, Moorman & Larson, of East Alton, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiffs, Dave and Jo Ann Brewer, brought an action for breach of a written contract the terms of which called for defendant, Custom Builders Corp., to build the "shell" of a single-family residence at a price of $17,985. Under the terms of the contract plaintiffs, who acted as their own general contractor, agreed to pay for all necessary permits and to make payments on the contract to defendant as the work progressed. Defendant agreed to build the shell according to a building plan which was incorporated into the contract and to perform "all carpenter work in the best workmanlike manner."

At the time this action was brought, plaintiffs had paid to defendant $15,150, of which $15,124 had been applied toward the contract price and $26 had been applied toward a building permit. Defendant had completed most, but not all, of the work described in the contract; however, it was plaintiffs' claim that much of the work had not been done in the best workmanlike manner. After a trial without a jury, the court awarded plaintiffs $8,294 as "net damages." Thereafter, defendant timely filed a post-trial motion, which was denied. Defendant has appealed.

In this appeal, defendant asserts that the trial court "erred in permitting plaintiffs-appellees to bring their cause of action without first complying with the express terms of the contract," and that the trial court erred in certain aspects of the assessment of damages.

Defendant's first contention is based upon paragraph 11 of the contract, which provides:

"If any defect is specified by the Purchaser and accepted as such by the Seller and cannot be remedied within a period of forty-eight (48) hours, the Purchaser may retain not more than two percent (2%) of the purchase price, ninety-eight percent (98%) shall be paid upon the delivery and erection of said house as aforesaid. The two percent (2%) withheld above shall be paid to the seller immediately upon the remedying of the defect."

Defendant argues that this paragraph amounts to a condition precedent to plaintiffs' bringing suit. Defendant asserts that this paragraph imposed upon plaintiffs a duty to pay, at least, 98% of the contract price, or to withhold no more than 2% of the contract price, and, since plaintiffs did not fulfill this duty, the instant suit could not have been brought. We do not agree with defendant's contention.

■■ First of all, we note that paragraph 11 begins with the words, "If any defect is specified by the Purchaser and accepted as such by the Seller * * *." It would appear then that this paragraph does not even apply unless plaintiffs had specified certain work to be defective and defendant had thereafter agreed that that work was defective. There is no allegation in any of the pleadings in this case to the effect that the parties had agreed on any work as being defective. Moreover, we find no express reference in paragraph 11 to the bringing of a suit. In the absence of such an express reference, we are reluctant to find that the parties intended for a court action to be barred unless plaintiffs had first paid 98% of the contract price.

■■ The trial court found that defendant had substantially breached the contract by failing to perform many aspects of the construction in a workmanlike manner. The trial court then held that paragraph 11 was ambiguous in that it was "not clear at all to the court from a reading of paragraph numbered 11 of the agreement in writing * * * that plaintiffs are required to pay 98% of the purchase price where defendant has first and in a substantial manner breached the written agreement." The court ruled that since the contract had been written by defendant, the ambiguity of paragraph 11 should be construed against defendant. We agree the paragraph is ambiguous and find no error in the court's construing the ambiguity against defendant. *Watson Lumber Co. v. Guennewig*, 79 Ill. App. 2d 377, 226 N.E.2d 270; *Bost v. Paulson's Enterprises, Inc.*, 36 Ill. App. 3d 135, 343 N.E.2d 168.

Defendant's second contention concerns the amount of damages awarded plaintiffs by the trial court. The trial court's order specified four categories for which damages were awarded: (1) defects which had been corrected by Dave Brewer through his own labor; (2) defects relating specifically to the roof, which could be repaired by a professional builder; (3) defects which affect the market value of the residential structure but which cannot be corrected without prohibitive damage to the structure; and (4) savings on materials, specifically, cedar siding, because of plaintiffs' decision to use brick rather than cedar siding on a substantial portion of the exterior walls. The court specified the amount awarded for each category, as follows:

| | |
|---|---|
| $ 815.00 | self repairs |
| 3,090.00 | roof repairs[1] |
| 7,500.00 | loss of market value |
| 250.00 | savings on cedar |
| 11,655.00 | total damages |

[1] We note that the amount awarded in the category of roof repairs should have been, consistent with the figures used by the court in calculating that amount, $3,100 rather than $3,090.

The court held that defendant was entitled to an offset of $2,361, the amount which defendant claimed was still to be paid on the contract.[2] The court then calculated the amount of "net damages" as $8,294.[3]

The ordinary rule applied in cases involving building contracts is that a builder is not required to perform perfectly, but rather he is held only to a duty of substantial performance in a workmanlike manner. (*Watson Lumber Co. v. Guennewig; Ehard v. Pistakee Builders, Inc.*, 111 Ill. App. 2d 227, 250 N.E.2d 1.) The purchaser who receives substantial performance of the building contract must pay the price bargained for, less a credit as compensation for deficiencies existing in what he received as compared to what strict performance would have given him. *Watson Lumber Co. v. Guennewig; Broncata v. Timbercrest Estates, Inc.*, 100 Ill. App. 2d 49, 241 N.E.2d 569; *Ed Keim Builders, Inc. v. Webb*, 1 Ill. App. 3d 375, 274 N.E.2d 192; 13 Am. Jur. 2d *Building and Construction Contracts* §80, at 82 (1964).

According to Professor Corbin, a contractor whose work amounts to less than substantial performance has no right to the contract price; he is said to have no remedy on the contract. In such case, the purchaser's refusal to pay is not a breach of contract, even though he may eventually be compelled to pay something. If the purchaser must pay, his duty is non-contractual in character and can more appropriately be called "quasi-contractual." The builder's right is, under a theory of quantum meruit, a right to recover only reasonable compensation for value received by the purchaser over and above the injury suffered by the builder's breach. 3A Corbin on Contracts §710, at 342 (1960), and cases there cited.

What will be considered substantial performance of a building contract is difficult to define, and whether substantial performance has been given will depend on the relevant facts of each case. (3A Corbin on Contracts §704 (1960); 13 Am. Jur. 2d *Building and Construction Contracts* §43 (1964).) One factor that is important in determining whether the builder has rendered substantial performance is the actual receipt and enjoyment of benefits by the purchaser. Depending on the facts of the case, there may be such an acceptance by the purchaser as operates as a discharge of the builder from liability for breach, in which case there will be no deduction from the contract price; or, on the other hand, the facts may show only acceptance and use of such a character as will evidence merely that performance is substantial, in which case the builder will be

---

[2] Actually $2,861 remained unpaid on the contract price; but defendant in claiming the amount of $2,361 had allowed plaintiffs a credit of $500 for "stairs and work to be done."

[3] It is apparent that in calculating the net damages figure the court made a mathematical error of $1,000 in favor of defendant. Consistent with the total damages figure of $11,655 and the offset figure of $2,361, the net damages figure should have been $9,294. This error and the error mentioned in footnote 1 above are not significant in light of our disposition of this case.

entitled to the contract price less a deduction for defects in performance. 3A Corbin on Contracts §711, at 343 and 346 (1960); 13 Am. Jur. 2d *Building and Construction Contracts* §56 (1964); 17A C.J.S. *Contracts* §514(2)(b) (1963); see *Fitzgerald v. Neville*, 210 Ill. App. 659 (abstract opinion).

As a general rule, the measure of damages, or the credit due the purchaser, when performance by the builder has been less than full performance, is the cost of correcting the defects or completing the omission, rather than the difference in value between what ought to have been done in full performance and what was actually done. But this general rule only applies where the correction or completion would not involve unreasonable destruction of the work done by the contractor and the cost thereof would not be grossly disproportionate to the results obtained. If to repair the defects or omissions would require a substantial tearing down and rebuilding of the structure, the measure of damages is the difference in value between the work if it had been performed according to the contract and that which was actually performed. 13 Am. Jur. 2d *Building and Construction Contracts* §§79 and 80 (1964); 1 Restatement of Contracts, §346(1)(a) (1932).

■■ In the instant case the trial court, after hearing the evidence and personally viewing the premises, found that "the numerous defects in construction * * * constitute a substantial breach by the defendant corporation of its contractual duty to perform carpentry work in the 'best workmanlike manner.'" It would seem, then, that defendant's performance was less than substantial performance and that damages should have been measured according to quantum meruit. Nevertheless, we feel that plaintiffs' activities in correcting many of the claimed defects and in proposing to correct many others, amounts to acceptance and use of the structure of such a character as to recognize that defendant's performance is substantial. Those activities do not, however, amount to such an acceptance as would operate as a total discharge of defendant's liability for breach. Plaintiffs were, after all, their own general contractor and, in that respect, both parties anticipated that plaintiffs would see to the completion of the building after defendant had performed. Moreover, before plaintiffs undertook to correct any defects, plaintiffs gave defendant sufficient notice that defendant's performance was regarded as unsatisfactory; and plaintiffs began correcting the defects only after it became clear that defendant would not satisfactorily correct the defects claimed by plaintiffs to exist. Therefore, the measure of damages in this case is that stated above to be applicable when performance is substantial, although not in strict compliance with the contract.

■■ The trial court did, in fact, apply this standard in assessing plaintiffs' damages. Defendant, however, claims that the court erred, with

respect to nine different items, in either making an award of damages or in assessing the amount awarded. Defendant first contends that the court erred with respect to the following three items enumerated by the court under the category of "self repairs":

1. Built steps to the garage—$80
2. Curved stairs—materials—$400
3. Curved stairs—labor—$220

Defendant asserts that the blueprints for the house, which were admitted into evidence at trial, show that the steps to the garage were to be concrete, since they appear on the "foundation plan" page of the blueprints. Defendant argues that if the steps to the garage were to be concrete, then they could not have been part of the work required of defendant by the contract. We agree with defendant's contention.

The blueprints show that the house which is the subject of the instant action had several different floor levels. The lowermost floor level was that of a basement garage. Adjacent to the garage, with a floor level 49½ inches above the floor of the garage, was the basement recreation room. The "foundation plan" page of the blueprints shows a stairway with six risers of 8¼ inches each. In the contract itself there is no specific reference to the stairway from the recreation room to the garage. The contract does, however, contain a nonexclusive list of items for which defendant was not responsible. Among the items enumerated are "foundation," "garage concrete," "basement floor," and "garage." We feel that in light of the fact that the steps to the garage appear on the "foundation plan" page of the blueprints, a reasonable construction of the contract shows that these steps are among the items for which defendant assumed no responsibility. This conclusion is buttressed by the fact that another part of the contract does contain an express reference to "basement steps" with "no risers," which were to be built of yellow pine by defendant. This reference cannot be to the steps from the recreation room to the garage, since the steps connecting those two portions of the house were, according to the blueprints, to have risers. The "basement steps," in contrast to the steps to the garage, do not appear on the "foundation plan" page of the blueprints. In light of all these factors, it appears that the steps to the garage were not to be provided by defendant under the terms of the contract, and the trial court erred in awarding plaintiff $80 for the construction of those steps.

■■ Defendant contends that the court erred in assessing the amount of damages awarded for labor and materials with respect to a curved stairway which was to be, but which was not, constructed by defendant. Defendant argues that, as evidenced by the invoice it had sent to plaintiffs and by the fact that defendant's counterclaim was for $500 less than the amount still owed on the contract price, defendant had already given

plaintiffs a credit for the curved stairway labor and materials which defendant had not supplied. Thus the trial court gave plaintiff duplicate damages for the curved stairway. We agree that allowing plaintiffs to take advantage of the credit granted them by defendant and also giving plaintiffs damages for the same labor and materials for which defendant had given the credit is to unjustly grant plaintiffs double damages. (See *Wisconsin Iron & Wire Works v. George W. Stiles Construction Co.,* 187 Ill. App. 4 (abstract opinion).) To avoid this duplication, on remand of this case defendant should be permitted to amend its counterclaim to claim as a set-off the exact amount of the contract price which was unpaid by plaintiff, without regard to any credit defendant may have given had this action not been brought.

■■ In addition to the assertion that the court erred in duplicating damages for the curved stairway, defendant also contends that the court erred in assessing plaintiffs' damages for Dave Brewer's labor in building the stairway. As stated above, the court awarded plaintiffs $220 for Dave Brewer's work on the curved stairway. The only evidence produced at trial on the value of this labor was provided in the testimony of Dave Brewer and the testimony of Elmer Kurtek, a home builder who testified as an expert witness for plaintiff. Dave Brewer testified that he had spent "two and a half, three days" working on the construction of the stairway. Elmer Kurtek testified that, at the time of Dave Brewer's labor, a skilled carpenter would have been paid $10 per hour and that at the time of the trial in the instant case, a skilled carpenter would have been paid $12 per hour. Defendant argues that since the evidence showed Dave Brewer to be an assistant manager of a furniture store rather than a skilled carpenter the trial court should not have calculated the amount to be awarded for plaintiff's labor by using the hourly pay rate of a skilled carpenter. While we tend to agree, in general, that the portion of plaintiffs' damages awarded for repair provided by Dave Brewer's labor should not have been calculated at the rate of a skilled carpenter, we do not feel that the amount awarded in this case was improper. We note that the trial court, acting as the trier of fact and by agreement of the parties, personally viewed the house that is the subject of this action. The trial court was, therefore, necessarily in a better position than we are to determine the amount of labor that reasonably would have been required to construct the staircase and the amount of compensation reasonably attributable to that labor. Moreover, we also note that defendant produced no evidence at trial concerning the value of the labor required to construct this stairway. We find no error in the award of $220 for Dave Brewer's labor.

Defendant next attacks four items for which the trial court awarded damages under the category of defects relating specifically to the roof,

which could be repaired by a professional builder. The items referred to and the amount awarded by the court are as follows:

  4. Repairs to the roof—$1,400
  5. Removal of existing soffits and replacement with 2 x 6 plates —$675
  6. Structural repair to loose mansard—$175
  7. Building out arched windows—$850

■■ As to the $1,400 award for repairs to the roof, we find no error. Elmer Kurtek, who had been a home builder for 22 years, testified that he had examined the house and, in his opinion, the roof was too flat and would have to be replaced. He estimated that the cost of replacement would be $1,400. William B. McGinnis, the president of the defendant corporation, testified that the repairs needed to make the roof watertight would cost considerably less than that amount. The trial court, acting as the trier of fact, apparently gave greater weight to the testimony of Kurtek than to that of McGinnis. The relative weight and sufficiency of expert and opinion testimony in a given case is peculiarly within the province of the trier of fact to decide. (*Central National Bank & Trust Co. v. Central Illinois Light Co.*, 65 Ill. App. 2d 287, 212 N.E.2d 489; 31 Am. Jur. 2d *Expert and Opinion Evidence* §181 (1967); 32 C.J.S. *Evidence* §572(1) (1964); 6 Callaghan's Illinois Evidence §18.26 (1964).) We, therefore, find no error with respect to the award of $1,400.

■■ Defendant contends that the award of $675 for removing the existing soffit and installing 2 x 6 plates was improper in that the award was based, at least partly, on work which defendant had no duty to perform. We agree. Witness Kurtek testified that the construction work was unfinished with respect to the soffit in that the soffit which had been installed by defendant did not meet the top of the brickwork. Kurtek testified that the problem could be corrected by removing the existing soffit, installing 2 x 6 plates and 2 x 4 short studs, and re-installing the soffit. Kurtek estimated the cost of this work to be $675. Kurtek admitted, however, and plaintiffs stipulated, that the contract did not call for the installation of 2 x 6 plates. Witness McGinnis testified that the installation of 2 x 6 plates was not required by the contract and that the installation of 2 x 6 plates was not necessary for the building to be structurally sound. In light of this testimony, the trial court could not properly have concluded that it was necessary to install 2 x 6 plates to correct the problem. The trial court nevertheless awarded the amount which Mr. Kurtek estimated that the work would cost with the installation of the 2 x 6 plates.

■■ In an action for damages for breach of contract, the party seeking to recover must establish not only that he sustained damages, but also he must supply a reasonable basis for computation of those damages. (*Supergear Drive Corp. v. Hollister-Whitney Co.*, 327 Ill. App. 414, 64

N.E.2d 672; *Watson Lumber Co. v. Guennewig;* 25A C.J.S. *Damages* §162(11) (1966); 22 Am. Jur. 2d *Damages* §26 (1965); 15 Ill. L. & Pr. *Damages* §246 (1968); 3 Callaghan's Illinois Evidence §§4.44 and 4.46 (1964).) Where the opinion as to the amount of damage suffered in a given case is based upon an element not properly considered, the opinion does not form a proper basis for the award of damages. (See *East St. Louis Light & Power Co. v. Cohen,* 333 Ill. 218, 164 N.E.182; *City of Chicago v. Chicago City Ry. Co.,* 302 Ill. 57, 134 N.E. 44; *Department of Public Works & Buildings v. Bills,* 66 Ill. App. 2d 170, 213 N.E.2d 110.) If the party having the burden of proof establishes that he is entitled to damages, yet fails to establish a proper basis from which those damages can be computed, he is entitled to only nominal damages. (*Peoria & Pekin Union Ry. Co. v. Peoria & Farmington Ry. Co.,* 105 Ill. 110; *Staley v. Lyman,* 151 Ill. App. 137; see 25 C.J.S. *Damages* §§9 and 12 (1966); 25A C.J.S. *Damages* §162(11) (1966); 22 Am. Jur. 2d *Damages* §5 (1965).) Since, in the instant case, plaintiffs proved that they were entitled to damages for defendant's defective workmanship with respect to the soffit, but failed to produce proper evidence from which the amount of their damages could have been reasonably computed, they should have been awarded only nominal damages for this defective workmanship.

■■ Defendant's next contention is that the award of $175 for the repair of the mansard was excessive. On direct examination witness Kurtek testified that the mansard was loose, or unsecured, and would have to be straightened and renailed. Mr. Kurtek estimated the cost of the work to be $175. On cross-examination Mr. Kurtek admitted that the problem could be corrected by an alternative method which would involve the installation of a baseboard. Mr. Kurtek estimated the cost of this method of repair to be less than half of the cost of the other method. However, when asked by defense counsel whether the plans indicated that "there should be a baseboard there," Mr. Kurtek responded that the plans did not so indicate. In view of the fact that the plans did not call for the installation of this baseboard, we fail to see how the trial court erred by not basing the amount awarded for repair of the mansard on the alternative method suggested on cross-examination. There was proper testimony upon which the court could, and did, conclude that straightening and renailing would correct the problem and that the cost would be $175. The award of $175 for this repair was, therefore, proper.

■■ Defendant next argues that the trial court erred in awarding $850 for reconstructing the window frames of three arched windows so that the top of the frames extended eighteen inches outward from the mansard. Our review of the record shows that there was sufficient evidence from the blueprints and the testimony of Dave Brewer for the trial court to conclude that the contract called for the arched windows to

be extended 18 inches outward from the mansard. Furthermore, the amount of the award was properly based on the opinion of Elmer Kurtek, testifying as an expert witness, that the cost of the construction would involve $475 for millwork performed by a planing mill and $375 for Mr. Kurtek's labor in completing the project.

The third category of defective workmanship for which the trial court awarded damages concerned several defects in the interior of the house, which affect the market value of the house but which cannot be repaired without prohibitive damage to the house. For these collective defects the trial court awarded a single sum of $7,500 damages. The amount of this award was based upon the opinion expressed by Oliver Fraley, a real estate appraiser who testified as an expert witness for plaintiffs, that the "house is devaluated to the extent of about $7,500 due to the conditions which exist" in the interior of the home. Defendant argues in this appeal that the amount of this award was improper in that it was based in part upon water leak damage to drywall that had been installed by Dave Brewer, when he knew that the roof had not yet been corrected. The trial transcript, however, shows Dave Brewer to have testified that he had hired a man to install the drywall only after defendant's workman had come to the home three times to fix the roof and had assured Dave Brewer that the roof was properly fixed.

■■ As we have stated previously, when repairing the defects or omissions of a builder's performance would involve a substantial tearing down and rebuilding of the structure, to avoid economic waste the measure of damages is not the cost of repair, but rather is the difference in value between the work if it had been performed according to the contract and the work as it was actually performed. Obviously, under this measure of damages, there will not normally be compensation to the purchaser for work which was not within the contractual duties of the builder. However, when, as in this case, other injuries occur because of the builder's breach, which could not reasonably be avoided and which the builder had reason to foresee at the time of contracting or which may fairly and reasonably be said to have arisen from the breach, the purchaser's recovery should include compensation for such other injuries. (*Underground Construction Co. v. Sanitary District*, 367 Ill. 360, 11 N.E.2d 361, 115 A.L.R. 57; 5 Corbin on Contracts §1090, at 499 (1964); 25 C.J.S. *Damages* §24 (1966).) We, therefore, find no error in the court's taking into account in assessing plaintiffs' damages the injury to the drywall installed by Dave Brewer after he had been assured by defendant that the roof was watertight.

■■ Defendant's final contention is that the court erred in awarding plaintiffs a credit of $250 on the contract price for cedar siding which defendant had originally agreed to provide but which the parties later

agreed defendant would not have to provide. It was undisputed that after defendant had begun construction the parties agreed that brick should be used instead of the cedar siding. Moreover, the only evidence presented concerning the value of this cedar was the testimony of William McGinnis, the president of the defendant corporation, that the cedar cost approximately $250. Under such circumstances, we fail to see how the credit allowed by the trial court was improper.

Defendant apparently feels that the credit for the unused cedar siding was improper because the trial court refused to allow defendant a credit for other material furnished by defendant which was not required under the terms of the contract. Nevertheless, whether defendant should or should not have been compensated for the other material has no bearing on the propriety of the credit for the cedar siding.

In light of the above discussion, this cause is affirmed in part and reversed and remanded in part for re-assessment of damages in accordance with the law as discussed herein.

Affirmed in part; reversed and remanded in part.

KARNS, P. J., and EBERSPACHER, J., concur.