HERBERT W. JAEGER & ASSOCIATES, Plaintiff-Appellant, v. SLOVAK AMERICAN CHARITABLE ASSOCIATION *et al.*, Defendants-Appellees.

Second District No. 2—86—0152

Opinion filed March 13, 1987.—Supplemental opinion filed on denial of rehearing May 29, 1987.

Ellis E. Fuqua, of Fuqua, Winter, Wysocki & Stiles, Ltd., of Waukegan, for appellant.

Wayne B. Flanigan, of Kuseski, Flanigan & Associates, of Waukegan, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

This is an appeal from the circuit court of Lake County assessing damages against plaintiff in the amount of $142,640.

Herbert W. Jaeger & Associates (Jaeger), a general contractor, sued the Slovak American Charitable Association (the association) for breach of a construction contract and foreclosure of a mechanic's lien against the property. The defendant association counterclaimed, alleging that Jaeger had breached the contract. Jaeger ceased work on the building in July 1973 when the association's lender refused to make scheduled payments to Jaeger and its subcontractors because Jaeger refused to comply with the bank's requests for more information. The trial court entered judgment for Jaeger and granted a mechanic's lien against the property. On appeal, this court reversed, finding that the bank's requests for information were authorized under the Mechanics' Liens Act (Ill. Rev. Stat. 1971, ch. 82, par. 5) and that Jaeger breached the contract when it stopped construction. (*Deerfield Electric Co. v. Herbert W. Jaeger & Associates, Inc.* (1979), 74 Ill. App. 3d 380.) The case was remanded to the trial court with instructions to enter judgment for the association and to hold a new trial solely to assess damages on the counterclaim. Jaeger petitioned for a rehearing, after which this court entered a supplemental opinion instructing the trial court to award Jaeger the value of benefits received by the association as a result of Jaeger's partial construction, less damages caused by its failure to complete the work. 74 Ill. App. 3d 380, 386-87.

On remand, the court assessed the association's damages at $151,440, which included amounts paid to Jaeger and its subcontractor, and $20,000 attributable to the cost of removing the incomplete

structure. The court then reduced the award by $8,800 for windows removed from the construction site and retained by the association, resulting in a net award of $142,640. The court found the windows to be the only benefit conferred upon the defendant as a result of plaintiff's part performance. The building was never completed, and the association eventually sold the property in 1979 for $415,000, which included a $20,000 price reduction for removing the construction. Plaintiff appeals both the court's conclusion that the incomplete structure was of no benefit to the association and the amount awarded on the counterclaim. A more detailed version of the facts is set out in our previous opinion (*Deerfield Electric Co. v. Herbert W. Jaeger & Associates, Inc.* (1979), 74 Ill. App. 3d 380), and we will not repeat them here, except as is necessary to a review of the trial court's assessment of damages.

I

Plaintiff contends that the trial court erred in concluding that the windows retained by the association were the only benefit conferred on it by virtue of plaintiff's partial construction of the building.

A

Plaintiff argues that the trial court misinterpreted this court's supplemental opinion requiring an award to plaintiff for its partial performance. The supplemental opinion provided:

"[A]s it appears from the record that Jaeger did partially perform the contract in good faith it would be unjust to deprive Jaeger of the amount of the benefits received from such performance by the Association, less any damages to the Association resulting from Jaeger's failure to complete the contract." (*Deerfield Electric Co. v. Herbert W. Jaeger & Associates, Inc.* (1979), 74 Ill. App. 3d 380, 386-87.)

On remand, the circuit court found that "there was no substantial performance of the contract by Plaintiff, no improvement of the construction site by the Defendant, [*sic*] and no retaining of any benefits or acceptance of any benefits by the Defendant in this cause excepting the *** windows retained by Defendant."

We find no merit in plaintiff's argument that the circuit court improperly required plaintiff to demonstrate substantial performance of the contract as a prerequisite to awarding plaintiff the value of its partial construction. Even where a party's performance has been less than substantial, he may recover the value of the ben-

efit his good-faith partial performance has conferred upon another. (*South Beloit Electric Co. v. Lar Gar Enterprises, Inc.* (1967), 80 Ill. App. 2d 367, 375.) Here, however, the court clearly based its refusal to make such an award on its finding that, other than the windows, no benefits were conferred on and accepted by the association. The fact that the court awarded plaintiff the value of the windows clearly demonstrates that it did not believe Jaeger's failure to substantially perform prohibited an equitable award to the plaintiff. In addition, we find that this court's supplemental opinion, rendered before the property was sold, did not preclude a finding that no benefits were conferred on the association as Jaeger argues, but rather permitted the trial court to award Jaeger the value of the benefits, if any, so conferred.

## B

Jaeger next argues that the evidence presented—primarily transcripts of prior testimony offered during the first trial—clearly demonstrates that the partial construction was a valuable benefit to the association. We note initially that, because there were contested issues of fact before the trial court with respect to the existence or acceptance of a benefit, the appropriate standard of review is whether or not the decision was against the manifest weight of the evidence. *Cf. Jensen Sound Laboratories v. Long* (1983), 113 Ill. App. 3d 331, 332; *Castle Concrete Co. v. Fleetwood Associates, Inc.* (1971), 131 Ill. App. 2d 289, 292-93 (where facts are undisputed, the appropriate standard of review is whether or not the facts sustain the judgment).

Jaeger offered as evidence transcripts of the prior testimony of two experts—John Simcic, a general contractor and architectural engineer, and Fred Graf, a real estate appraiser. Mr. Simcic valued the partially erected structure, which consisted of partial walls, a foundation, basement floors, and some plumbing and electricity, at $220,615 by estimating what it would fairly have cost to construct. Mr. Graf estimated the value of the property with the partial structure simply by estimating the value of the land and adding to it Mr. Simcic's estimate, concluding that construction cost is an appropriate measure of value where there is an apparent demand for the property as improved. Jaeger also presented the prior testimony of two subcontractors who stated the construction was a valuable improvement to the property but who offered no estimate of its value.

In addition, Jaeger produced the minutes of some of the association's meetings from 1973 through 1976. The minutes revealed that,

after plaintiff's breach, the association had difficulty in obtaining new financing or agreeing on any course of conduct. They rejected one of the subcontractor's offer to purchase the property for $200,000 plus assumption of the then outstanding $165,000 in payments due to subcontractors. The association decided instead to seek new financing and complete construction. When financing was finally available, however, the members could no longer agree to complete the project. Plaintiff also produced evidence that the structure was never completed and that when the property was sold in 1979 the purchase price was reduced by $20,000 to compensate the purchasers for the cost of demolishing the structure.

■■■ The generally accepted rule is that, where a defaulting builder is permitted to recover under an unjust enrichment theory after only partially performing a contract, the measure of damages is the benefit received by the nonbreaching party. (See 1 G. Palmer, Restitution sec. 5.3, at 577 (1978).) Unjust enrichment is based on the theory that a contract will be implied in law to avoid one party's retention of benefits at the expense of another. (See *Premier Electrical Construction Co. v. La Salle National Bank* (1984), 132 Ill. App. 3d 485, 496.) Recovery is properly limited under such a theory to the benefit acquired, and an enriched party who is innocent of any wrongdoing is not required to reimburse the other's losses and expenses. (See, *e.g., Hill v. Waxberg* (9th Cir. 1956), 237 F.2d 936, 939; *Fairbanks North Star Borough v. Tundra Tours, Inc.* (Alaska 1986), 719 P.2d 1020, 1029 n.15 (distinguishing *quantum meruit* from unjust enrichment).) While evidence of the cost of construction is not entirely irrelevant in determining that value, the court should appropriately focus on the benefit to the nonbreaching party. 719 P.2d 1020, 1029 n.15.

■■ Plaintiff's experts based their estimates of benefit received solely on the estimated cost of construction. Consequently, the court gave their testimony little weight. In addition, evidence of an offer to purchase property is not nearly as reliable an estimate of its value as is evidence of an actual sale. (See, *e.g., City of Chicago v. Harrison-Halsted Building Corp.* (1957), 11 Ill. 2d 431, 438; *Crosby v. Dorward* (1911), 248 Ill. 471.) Plaintiff thus produced no reliable evidence that any valuable benefits were received by the association. Rather, the record clearly discloses that the association not only made no use of the partial construction, but agreed to a reduction in the actual sales price of the property to compensate the purchasers for its removal. Therefore, the weight of the evidence clearly supports the trial court's conclusion that Jaeger's partial performance

conferred no benefit on the association.

■ ■ In addition, no recovery under an unjust enrichment theory is permitted unless the plaintiff demonstrates that the defendant has voluntarily accepted the benefits plaintiff purportedly conferred. (*Premier Electrical Construction Co. v. La Salle National Bank* (1984), 132 Ill. App. 3d 485, 496.) Under similar circumstances, even use and occupancy of the improved property have been held to be insufficient to constitute acceptance. (1 G. Palmer, Restitution sec. 5.14, at 678-79 (1978) (and cases cited therein).) We therefore conclude that the association's internal agreement to seek new financing and complete construction, which intention was never carried out, is insufficient to constitute acceptance of the plaintiff's part performance.

## II

■ Jaeger next challenges the court's award of damages to the association. We first summarily reject Jaeger's argument that the association must be denied relief for having failed to mitigate its damages. Plaintiff argues that in failing to accept the subcontractor's offer to purchase the property and in failing to acquire new financing to complete construction, the association neglected to avail itself of two clear opportunities to avoid damages. Plaintiff does not explain, however, how either option would have minimized the association's damages. The association eventually sold the property at a much greater profit than the subcontractor's offer would have given it. And the record clearly indicates that the association would have incurred costs far above the original contract price to complete construction, even if Jaeger had been rehired as the general contractor. Plaintiff erroneously equates defendant's duty to mitigate its own damages with a duty to preserve the value of plaintiff's part performance. The law imposes no such duty, and we find no failure to mitigate damages.

■ Jaeger's final argument is that the court erred in assessing the association's damages. The court awarded as damages to the association $35,000 paid to Jaeger under the contract and $96,440 paid to the subcontractors on Jaeger's behalf. It additionally awarded $20,000 as the cost of demolishing the structure. Jaeger contends that the only proper measure of damages where a contractor breaches a construction contract is the difference between the fair market price of completing construction and the contract price. While we agree that this is the usual measure of damages for breach of a construction contract (see *Ross v. Danter Associates,*

*Inc.* (1968), 102 Ill. App. 2d 354, 370), we note that the rule is not invariable (see, *e.g., Watson v. Auburn Iron Works, Inc.* (1974), 23 Ill. App. 3d 265, 268-69) and that a court may award an injured party its expenditures in partly performing its own obligations under the contract as an alternative measure of damages where the usual method would be too speculative (5 A. Corbin, Contracts sec. 1031, at 188 (1964); see also Restatement of Contracts sec. 333 (1932); Restatement (Second) of Contracts sec. 349 (1981)). And as long as there is no duplication of damages, the innocent party may be awarded any losses caused by the other's breach as well. 5 A. Corbin, contracts sec. 1031, at 192, 194-95 (1964).

Here, the building was never completed, and the record contains no reasonably reliable estimate of the cost of completion as originally designed. However, the association's expenditures and the loss it suffered in absorbing the demolition costs for the purchaser were definite and foreseeable and were uncontroverted by Jaeger. Although there is authority for the principle that uncertainty in the amount of damages will not preclude an award where the uncertainty is directly attributable to the defendant's conduct (*Getschow v. Commonwealth Edison Co.* (1982), 111 Ill. App. 3d 522, 534; *Henry's Drive-In, Inc. v. Anderson* (1962), 37 Ill. App. 2d 113, 126), there is no corollary rule that precludes a court from adopting an alternate measure of damages in the absence of proof that the breaching party's conduct has rendered the typical measure of damages too uncertain to be reliable. We therefore conclude that, contrary to Jaeger's contention, the association was not obligated to demonstrate that its failure or inability to procure new financing to complete construction—which would have given it a definite cost-of-completion figure—was directly attributable to Jaeger's breach.

After reviewing the record, we conclude that the damages awarded were proper as expenditures under the contract and loss attributable to Jaeger's breach and that the amount awarded was clearly supported by the evidence.

For the reasons stated we therefore affirm the judgment of the circuit court.

Affirmed.

HOPF and DUNN, JJ., concur.

114

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE UNVERZAGT delivered the opinion of the court:

 In its petition for rehearing, Jaeger complains that the portion of this court's opinion relating to benefits conferred by a breaching builder on the property owner is based on authority not cited by either party and fails to distinguish the authorities on which Jaeger relied. The courts in both *Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, and *Royal Ornamental Iron, Inc. v. Devon Bank* (1975), 32 Ill. App. 3d 101, on which Jaeger predominantly relies, recognized that a party who breaches after only partially performing a contract is entitled only to the benefits conferred on the property owner less damages caused by its failure to complete the contract. (*Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 673; *Royal Ornamental Iron, Inc. v. Devon Bank* (1975), 32 Ill. App. 3d 101, 107.) The cases are applicable to the instant case only to the extent of that holding. The courts in *Brewer* and *Royal Ornamental* went on to find that the builders in those cases had, in fact, substantially performed and awarded damages based on substantial performance. *Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 674 (plaintiffs' subsequent actions demonstrated that they accepted the builder's performance as substantial); *Royal Ornamental Iron, Inc. v. Devon Bank* (1975), 32 Ill. App. 3d 101, 108 (finding that "substantial performance by Royal" required the owner to pay the contract price less the cost of curing the deficiencies in performance).

Here, by contrast, Jaeger left the defendant association with less than half a building, which the association inevitably had to complete or remove. There was no substantial performance, and the association's tentative and temporary plan to complete construction could not reasonably have converted Jaeger's work into a substantial performance of a building contract. The trial court therefore properly limited Jaeger's potential recovery to the only benefit it conferred upon the association—the windows retained by it.

HOPF and DUNN, JJ., concur.