DONALD D. KNOWLES *et al.*, Plaintiffs and Counterdefendants-Appellees, v. WESTBROOK BUILDERS, LTD., Defendant and Counterplaintiff-Appellant.

Third District    No. 3—88—0709

Opinion filed September 12, 1989.

Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet (Thomas R. Wilson, of counsel), for appellant.

Davis, Varsek & Dystrup, P.C., of Joliet (Scott M. Hoster, of counsel), for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

Plaintiffs Donald and Judith Knowles contracted with defendant Westbrook Builders, Ltd., for defendant to build a single-family residence on a specified lot in Joliet, Illinois, for $166,935 plus extras. The contract was signed on May 19, 1986, with construction to begin within 21 days thereafter, and construction to be completed within 150 days after it was begun. Plaintiffs obtained a construction loan at a Joliet bank. The bank was to make four separate payments as construction progressed. Under the terms of the contract, construction should have been completed and the final payment made by early November 1986.

In fact, construction began behind schedule on June 23, 1986. The first progress payment by the bank was not called for by or paid to defendant until October 1986. The house was nowhere near completion by mid-November 1986. Workmanship on the house would generously be described as slovenly. Nonetheless, Roger West, president of Westbrook Builders, promised plaintiffs that the house would be ready to move into by Thanksgiving. When that deadline passed with no discernible progress or improvement, West promised Christmas, then Valentine's Day, 1987. Plaintiffs agreed to the requested extensions each time until March 1987. They then contacted the inspections department from the City of Joliet. City inspectors found that the house did not conform to the city construction code in several respects, including plumbing, fireplace chimneys, and attachment of brick to house. The contract specified that all materials would be of standard quality, the construction accomplished in a workmanlike manner, and that the house would conform to applicable city codes. From the evidence, including the many pictures which we have carefully examined, it is clear that the materials were not, the construction was not, and the house did not.

After conferences with the city inspectors, West promised plaintiffs in March that defendant would correct all the problems. However, he told coplaintiff Donald Knowles at the construction site, "What you see is what you get." Finally, on April 1, 1987, 138 days after the contractual completion date, plaintiffs ordered defendant off the jobsite and directed the bank not to make the fourth and final

payment for the construction.

Plaintiffs then filed suit alleging breach of contract for failure of defendant to complete the house on time in conformity with applicable building codes and in a workmanlike manner. Defendant counterclaimed, alleging that plaintiffs prevented it from completing the contract and alleging that plaintiffs improperly withheld the last of the four payments due it under the contract.

A jury returned a verdict in favor of the plaintiffs on their complaint with damages of $58,000, and in favor of plaintiffs on defendant's counterclaim. Defendant took the instant appeal after denial of its post-trial motion. We affirm.

On appeal, defendant does not contest the characterization of its workmanship or the untimeliness of its performance. Instead, it raises three issues related to: (1) waiver of timeliness by plaintiffs; (2) admissibility of certain evidence on damages; and (3) impeachment of the jury's verdict.

Defendant first contends that plaintiffs prevented defendant from finishing the house under the contract and therefore cannot maintain the instant action for breach of contract. Westbrook further asserts that plaintiffs' permitting it to work on the house after the contractual deadline for completion had passed constituted a waiver of the deadline. Therefore, plaintiffs could not force defendant off the jobsite without giving it a reasonable opportunity to perform the contract.

■ Defendant principally relies on *Gamm Construction Co. v. Townsend* (1975), 32 Ill. App. 3d 848. Gamm was a subcontractor employed by the principal contractor, Richards, in construction of a house for Townsend. Gamm's work was to be completed in 70 days. Richards ordered Gamm off the construction site after the work was not completed in 116 days. Gamm won a judgment in the trial court for $10,500, the value of its labor and materials in the job. As to the contractor's contention that Gamm had breached the contract by failing to complete the work on time, the court found that the contractor had caused the delay by changing the specifications several times, thus rendering it impossible to complete the contract on time. Therefore, *Gamm* stands for the rule that when a party prevents performance of a contract, that party cannot recover for nonperformance by the other party.

■ In the instant case, deciding whether the owners' conduct prevented completion of the contract was a question for the trier of fact. Unlike *Gamm*, there was plenty of evidence to support the jury's conclusion that the plaintiffs did all they could to enable the

defendant to perform. Rather, it was the defendant's delay in construction and faulty workmanship that justified the plaintiffs in firing the defendant and stopping payments.

Moreover, there is evidence in this record which, if believed by the jury, would lead to the conclusion that defendant never intended to remedy the building code violations and other defects.

■ Defendant next contends that the trial court erroneously admitted evidence of diminution of market value of the house. It contends that the proper measure of damages where performance of the contractor is substantial but not complete is the cost of correction and completion, and not the change in market value. (*Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668.) *Brewer* involved a house which was not substantially complete, but which was treated as such by the court because of waiver by the plaintiff. In such a situation, *Brewer* held, the proper measure of damages is the cost of correcting defects or completing the construction. Damages based on these factors were properly awarded in *Brewer*.

However, another element of the damages in *Brewer* was for defects of workmanship which would not be repaired "without prohibitive damage to the house." The proper measure for these damages is lost value of the house. (*Brewer*, 42 Ill. App. 3d at 679.) Both the cost of correcting defects and omissions, and the lost value of the house, can properly be elements of damage in the same case.

■ But defendant has assumed a conclusion—that it substantially performed on the construction contract—which the jury was not obligated to reach. The trier of fact could have concluded that defendant's performance was not substantial. This is also a question for the trier of fact. Whether the owner has received the building and enjoyed the benefits is one important factor in determining whether there has been substantial performance. (*Joray Mason Contractors, Inc. v. Four J's Construction Corp.* (1978), 61 Ill. App. 3d 410.) Here, plaintiffs have not moved into or had use of the residence.

■ If performance was not substantial, then the only measure of damages would be lost value of the property. (*Witty v. C. Casey Homes, Inc.* (1981), 102 Ill. App. 3d 619.) Plaintiffs were entitled to present evidence on either or both the theories of cost of repair or lost value.

■ Plaintiffs called three expert witnesses on damages. Edward Batis, a real estate appraiser, testified both on lost value and cost of repair. He stated that there was no category in which to describe the workmanship on this house because it was so poor. He also estimated the fair market value of the house as it was and the fair market

value of the house if it had been done in a good and workmanlike manner.

Edward Mattox testified as to the quality of workmanship and the cost of repairing the house. Mattox gave specific figures underlying an estimated cost of $110,000 to repair. He also stated that in a house built as poorly as this, other defects may appear and the cost could be $20,000 to $30,000 higher than the figure he quoted.

Architect Robert Russ testified that the chimneys were structurally unsound and had to be replaced, that all the brickwork needed to be replaced due to failure to tie it in properly, that the front porch had to be replaced for structural reasons, and that all of the exterior siding on the house needed to be replaced. Thus, there was a sufficient foundation for testimony on lost value.

■ Finally, the defendant seeks to impeach the verdict of the jury by presenting two unsigned affidavits which purportedly are statements of two jurors. The statements assert that the jury was confused about what would happen to the money held in escrow. Defendant claims that it is entitled to a new trial as a result of that confusion.

Such statements are inadmissible. A jury may not impeach its own verdict by affidavit or testimony as to motive, method, or process by which a verdict was reached. Nor can the jury or a party challenge the verdict by explaining the basis for a verdict or asserting that the jury was mistaken. *Chalmers v. City of Chicago* (1982), 88 Ill. 2d 532.

The decision of the trial court is affirmed.

Affirmed.

SCOTT and STOUDER, JJ., concur.