EVANS AND ASSOCIATES, INC., Plaintiff-Appellee, v. SANDRA DYER, f/k/a Sandra Schwander, Defendant-Appellant (Russell Schwander *et al.*, Defendants).

Second District   No. 2—92—0964

Opinion filed June 7, 1993.—Rehearing denied July 20, 1993.

Grief, Bus & Konewko, of West Chicago (Dalton P. Grief, of counsel), for appellant.

Kupisch, Hunt, Carbon, Kaiser & Bush, of Bensenville (John R. Bush, of counsel), for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

In this case, defendant, Sandra Schwander (now Sandra Dyer), appeals from a judgment rendered in a bench trial by the circuit court of Du Page County. The court awarded $22,719.83 to Evans and Associates, Inc. (the contractor), in its suit to recover sums it alleged were due for the construction of a custom home for Sandra and her then-husband, Russell Schwander (the buyers), in Bartlett, Illinois.

At trial, the parties disputed whether the home was built in a workmanlike manner. On appeal, Sandra argues (1) that the trial court should not have permitted the contractor's vice-president, Michael Evans, to testify as an expert because there was no disclosure of the basis of his opinion; (2) that an exhibit regarding the structural integrity of certain beams installed in the home's great room should not have been admitted; (3) that the court should have allowed the buyers' architect to testify that the contractor did not comply with the building plans; and (4) that the trial court erred in refusing to grant their motion for judgment in their favor, made after the close of the contractor's case in chief.

### TRIAL PROCEEDINGS

The contractor's first amended complaint alleged causes of action for breach of contract, foreclosure of a mechanics' lien (see Ill. Rev. Stat. 1991, ch. 82, par. 1 *et seq.*) and recovery under the theory of *quantum meruit.* At trial, the contractor called Russell Schwander and Michael Evans as witnesses. The buyers called their architect, Ed

Faron, Sandra Schwander, Michael Evans, and Geri Mazel, a Du Page County records office employee.

Russell Schwander testified as an adverse witness (see Ill. Rev. Stat. 1991, ch. 110, par. 2—1102) that he and his then-wife Sandra hired the contractor to build them a home for $35,500 plus costs of labor and materials. He stated that two beams in the home's great room were installed upside down and had cracked entirely through their length. The roof in that area had also begun to crack. There were a hole in the garage floor about the size of a half-dollar and approximately 15 footprints in the garage floor. Additionally, the pipes in the guest bathroom would freeze, a stone sill in front of the front door was missing, and water gathered where the patio joined the house. Two trapezoid windows in the great room were too close to the fireplace, and a room above the garage was built incorrectly, resulting in a greater floor-to-ceiling height in the room and an inadequate floor-to-ceiling height in the garage. This inadequate height in the garage caused the garage door opener to be installed directly against the garage ceiling instead of hanging a distance away from the ceiling, and caused the tops of the garage windows to reach the garage ceiling. Further, the garage overhang was bowed. Finally, a second pour of the foundation was required and the home thereafter had seepage problems in the basement.

Russell also stated that the home's defects never threatened his health or safety and that he had lived in the home until marital problems with his wife spurred his move. He acknowledged that the plans for the home were drawn with a different building site in mind. He also stated that he had not paid the contractor the full price agreed upon. Russell further testified that he had talked with the supplier of the support beams and was informed that although the beams were installed incorrectly, the supplier would warrant the structural characteristics of the beams as installed. Russell admitted that he had received a copy of a letter written by a third person to the supplier stating that the beams were structurally sound.

The contractor then called its vice-president, Michael Evans. Evans had been a general contractor for five years and had received a bachelor of science degree in architecture from Iowa State University. He testified that he had signed a contract with the buyers and had not been fully paid. He further testified as to the manner in which the house was constructed, the problems encountered along the way and his attempts to solve those problems with the buyers. He admitted that two of the beams in the great room were installed upside down.

He also stated that the reason the trapezoid windows in the great room were too close to the fireplace was that the buyers had changed the plans from a brick fireplace to a stone one, which jutted out farther than a brick one would have and correspondingly shrank the distance between the sides of the fireplace and the adjacent windows. Evans admitted that the pitch of the patio did not conform to the plans, that having two foundation pours did not conform to the plans, that the garage overhang was bowed, and that the room above the garage did not conform to the plans. Evans also testified as to the amounts due his company and various subcontractors.

The buyers then made a motion for a directed finding. This motion was denied, and the buyers began their case by calling their architect, Ed Faron. Faron testified that he drew the plans for the buyers but did not have "substantial interaction" with Evans during construction. The trial judge allowed Faron to testify about his services and his observations when he visited the site, but did not allow him to testify as to whether the house as constructed deviated from the plans because Faron was not disclosed as an expert witness pursuant to Supreme Court Rule 220 (134 Ill. 2d R. 220).

Sandra Schwander then testified for the defense about the progress of her home's construction. She also identified photographs showing alleged defects in the home and testified about some of the defects earlier listed by Russell Schwander. Specifically, Sandra stated that the great room had windows which were to open and shut with a crank. The windows cranked open but had to be both cranked from the inside and pushed from the outside in order to close. She stated that the windows did not achieve a complete seal when closed. Sandra also testified that the beams in the great room cracked loudly in cold weather. It was also Sandra's testimony, with regard to the bowed garage overhang, that she and Russell had changed the plans for the overhang, but that the change was necessitated by the deviation from the plans when the room above the garage was constructed. Sandra further explained her negotiations with the contractor to address her concerns.

Michael Evans was called as an adverse witness by the buyers. (See Ill. Rev. Stat. 1991, ch. 110, par. 2—1102.) He elaborated on some of the problems he encountered during construction and explained how the subcontractors were paid. Evans also testified about amounts unpaid by the buyers at the time of trial and identified various final lien waivers.

Finally, Sandra Schwander testified that she did not recall receiving the final lien waivers but that she did remember receiving a statement from the contractor together with certain invoices.

Following closing arguments, the trial judge rendered judgment for the contractor on the breach of contract and mechanics' lien claims. The judge then found the *quantum meruit* claim moot. Sandra timely appealed.

### ANALYSIS

#### 1. THE LETTER

We address first the issue of whether the trial court should have admitted a letter written by an alleged structural engineer to the supplier of the beams that were admittedly installed upside down in the great room. At trial, Russell Schwander testified that he received a copy of the letter from Evans, and Russell agreed with the contractor's attorney's characterization of the letter as stating that "the beams were installed properly and meet all requirements, both county, state and federal, for the support of the roof in [his] home." Mr. Schwander also agreed that he received a certificate signifying that the supplier or manufacturer would, again in the words of the contractor's attorney, "warranty the structural characteristics of the beams installed at [his] home." Michael Evans testified that the same letter set forth that its writer, John Frederick, was an Illinois registered engineer.

Sandra contends that the letter should not have been admitted because (1) it was not disclosed pursuant to Supreme Court Rule 220(c) (134 Ill. 2d R. 220(c)) as the basis for Evans' expert opinion; (2) it was hearsay; (3) it was irrelevant; and (4) no proper foundation was laid.

The contractor argues that the letter was properly admitted for the purpose of explaining expert testimony by Michael Evans regarding the structural integrity of the beams. The contractor further argues that it presented a proper foundation for admission of the letter as a business record under Supreme Court Rule 236. 134 Ill. 2d R. 236.

■ First, we disagree with the parties that Michael Evans testified as an expert regarding the structural integrity of the beams. We have closely reviewed the testimony given by Mr. Evans and nowhere were qualifications presented that would have allowed him to express an opinion on structural engineering issues. Moreover, Evans never explicitly stated that, in his opinion, the great room beams were sound. At one point in the trial, Evans stated, without explanation,

that the beams were not defective. At another point, Evans merely noted that the beams had been checked out by the alleged engineer who had written the letter to the supplier and that the buyers had received a warranty from the supplier on the beams as installed. Evans admitted that he did not know that the beams had been installed upside down until he was notified of that fact by the buyers. Further, Evans gave an evasive answer when asked about the beams on cross-examination:

"Q. And you conceded that two of these three beams, which are bearing beams for the house, were not installed properly; is that correct?

A. That is correct.

Q. So in fact this would be a defect, would it not?

A. No, it would not.

Q. If it's not—if they are not installed in connection with the plans, is not a deviation from the plans a defect?

MR. BUSH: Objection, asked and answered.

THE COURT: Overruled. You can answer.

THE WITNESS: In one's opinion, maybe so."

Consequently, we believe that the letter could not have been properly admitted for the purpose of explaining Evans' expert testimony because Evans never testified as an expert concerning the beams.

■■ Next, we reject the contractor's claim that a proper foundation was presented for the letter to be admitted as a business record. Supreme Court Rule 236 (134 Ill. 2d R. 236) allows certain types of business records to be admitted as exceptions to the hearsay rule. Rule 236 provides in pertinent part:

"(a) Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility. The term 'business,' as used in this rule, includes business, profession, occupation, and calling of every kind." 134 Ill. 2d R. 236.

In order for the business records exception to be applicable, it must be shown that the record was made in the regular course of

business and that it was a regular business practice to create such a record. (*Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 727.) In this case, not only was there no testimony from the letter writer or anyone affiliated with him, but also the above foundation questions were never asked of any witness who testified. Thus, it is clear that the letter was not admissible as a business record.

■ The trial court below simply admitted the letter without elaborating as to the basis for its admission. We believe the letter was clearly hearsay and was not shown to be within any exception to the hearsay rule. "Hearsay evidence is in-court testimony or written evidence of a statement made out of court which is offered as an assertion of the truth of the matters contained in the out-of-court statement." (*Hengels v. Gilski* (1984), 127 Ill. App. 3d 894, 912.) The rule that hearsay is generally not admissible is not merely a technical one, but rather is "fundamental," as it is based on the need for cross-examination. *In re Marriage of L.R.* (1990), 202 Ill. App. 3d 69, 81.

Here, it is obvious that the statements contained in the letter from the alleged engineer to the beam supplier were out-of-court statements. Moreover, the letter was relied upon, at least in part, by the trial court to show not only that the beams were adequately tested by a competent individual, but also that they were structurally sound. This was incorrect. It is unknown just what the alleged engineer's qualifications were, what test or tests were performed, whether such tests are commonly performed on beams such as these, or what the test results were. The letter was hearsay and should not have been admitted as substantive proof.

### 2. EVANS' EXPERT TESTIMONY

■ We next address Sandra's claim that Michael Evans should not have been allowed to offer expert testimony in the field of structural engineering because the basis for his opinion, namely, the letter written to the beam manufacturer, was not disclosed to the buyers pursuant to Supreme Court Rule 220(c) (134 Ill. 2d R. 220(c)). This issue is a red herring because, as we have previously found, Mr. Evans did not testify as an expert on the beams' structural soundness. Rule 220, which pertains to expert witnesses, is thus inapplicable to the testimony of Mr. Evans, at least with regard to the beams. In any event, the buyers never objected to Mr. Evans' testimony on the basis of Rule 220 at trial. Consequently, any complaint on appeal that the requirements of Rule 220 were not satisfied is waived. *Baird v. Adeli* (1991), 214 Ill. App. 3d 47, 65.

### 3. MOTION FOR JUDGMENT

■■ Next, Sandra argues that the trial court erred in refusing to grant the buyers' motion for a directed finding made at the close of the contractor's case in chief. When a defendant in a nonjury civil case makes a motion for judgment in its favor after the plaintiff has presented its case in chief, that motion is made pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1110). According to that section and the case law, a defendant who presents evidence on its behalf after its motion is denied waives any complaint that the denial of the motion was error. (*City of Elgin v. Hawthorne* (1990), 204 Ill. App. 3d 807, 810; *Fear v. Smith* (1989), 184 Ill. App. 3d 51, 55.) Thus, Sandra's claim is waived.

### 4. SUBSTANTIAL PERFORMANCE—SUFFICIENCY OF THE EVIDENCE

■■ When reviewing the evidence in its entirety in this case, we believe that the contractor did not carry its burden of proving substantial performance. Generally, a builder is not required to build a perfect structure. Rather, he is required to substantially perform in a workmanlike manner. (*Howard v. Jay* (1990), 203 Ill. App. 3d 539, 544.) Our supreme court reiterated the relevant standard in a recent building contract case:

> " 'Substantial performance of a contract means performance in all the essential elements necessary to the accomplishment of the purpose of the contract. [Citation.] "Substantial" means in substance; in the main; essential, including material or essential parts. [Citation.]' " (*W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1986), 115 Ill. 2d 119, 126, quoting *People ex rel. Peterson v. Omen* (1919), 290 Ill. 59, 65-66.)

A buyer who receives substantial performance in a workmanlike manner from a builder must pay the contract price minus an offset as compensation for defects in the structure. (*Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 673.) "In substantial performance cases, the burden is on the contractor to establish the elements necessary to substantial performance recovery and, also, to show the amount he should recover." *Delta Construction, Inc. v. Dressler* (1978), 64 Ill. App. 3d 867, 871.

We realize that a sufficiency-of-the-evidence argument has not been made on appeal, but we note that we are authorized under Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), in our discretion, to "enter any judgement and make any order that ought to have been given or made, *** and grant any relief *** that the case may re-

quire." We are also cognizant of our supreme court's recent caveat that an appellate court should not raise new questions *sua sponte* when the questions might have been refuted or overcome if they had been raised at trial. (*Geaslen v. Berkson, Gorov & Levin, Ltd.* (1993), 155 Ill. 2d 223, 230.) In *Geaslen*, a law firm that had drawn up an opinion letter to be delivered to a corporation's owners regarding the creditworthiness of the firm's client to buy the corporation was sued by the corporation's owners after the client went bankrupt following the sale and the stock, now worthless, was returned to the owners. The trial court found that the firm owed no duty of care to the owners and dismissed the owner's complaint with prejudice. (*Geaslen*, 155 Ill. 2d at 227.) The appellate court found that a duty of due care was owed by the firm to the owners. (*Geaslen*, 155 Ill. 2d at 227.) The appellate court then raised the issue of breach *sua sponte*, found that the owners failed to plead a breach, and affirmed the dismissal of the complaint with prejudice based on the failure to plead a breach. (*Geaslen*, 155 Ill. 2d at 227.) The supreme court held that the appellate court's actions were improper because the defective pleading would probably have been correctable if the defect had been noted in the trial court. *Geaslen*, 155 Ill. 2d at 230.

Unlike *Geaslen*, where the owners were never put on notice that the sufficiency of their complaint on the issue of breach would be considered, the issue of substantial compliance was the main issue to be litigated in this case. The contractor's ability to recover hinged on its ability to prove substantial performance. Thus, it is not unfair for us to raise the sufficiency of the evidence to support the judgment on our own initiative.

The question of whether a builder has substantially performed under the contract is a question of fact. (*Erickson*, 115 Ill. 2d at 127.) Thus, to reverse, we must find that the trial court's conclusion that the contractor substantially performed is against the manifest weight of the evidence. (*Erickson*, 115 Ill. 2d at 127.) A factual finding is against the manifest weight of the evidence when a contrary conclusion is clearly evident. *V & V Cement Contractors, Inc. v. La Salle National Bank* (1983), 119 Ill. App. 3d 154, 157.

The evidence in this case showed the following defects: (1) the pipes in the guest bathroom are prone to freezing; (2) there is seepage of water in the basement; (3) load-bearing beams in the great room were installed upside down, have cracked along their length and apparently continue to do so; (4) water collects on the patio; (5) trapezoid windows next to the fireplace in the great room directly abut the fireplace when they were supposed to be separated from the fireplace

by a certain amount of wall; (6) the house does not have the front sill called for in the plans; (7) the ceiling in the garage is too low, causing the chain in the automatic garage door opener to dig into the ceiling's drywall; (8) there is a bow in the roof of the garage at the overhang; and (9) windows in the great room, which are meant to be operated with a crank, need to be both cranked from the inside and pushed from the outside in order to close and, even then, a complete seal is not achieved.

Of these nine defects, we will not consider two for the purposes of our substantial performance analysis because it is certainly arguable that the buyers accepted the contractor's performance as to these two defects. (See *Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 673-74 (whether, and to what extent, homeowners accept builder's performance relates to amount of damages recoverable by builder).) First, we will not consider the seepage in the basement because the buyers accepted from the contractor a letter in which the contractor agreed to be responsible for any damages resulting from defects in the foundation. Second, we will not consider the fact that the garage ceiling was built too low. The buyers were informed that a ceiling beam had been placed too low and they gave their approval to construct the ceiling at the lower level. It is not clear from the record, however, whether the buyers were informed of the ramifications of their decision, *i.e.*, that the garage windows would abut the ceiling and that the garage door opener would not be able to be suspended from the ceiling.

Thus, we are left to consider whether a builder has substantially performed when he builds a house in which load-bearing beams crack along their length, pipes freeze, a patio collects water, windows refuse to close correctly, a garage overhang bows, a front sill is missing and windows abut a structure, all in derogation of the building plan. We find that he has not.

While some of the defects here seem minor and one is apparently only cosmetic, a few are potentially serious. The most obvious defect is the incorrectly installed and cracking beams in the great room. There was no admissible evidence that the beams are structurally sound. Further, the evidence that the buyers received a warranty of some kind from the beam supplier on the beams as installed, while implicitly showing that the supplier thinks the beams are structurally sufficient, does not adequately substitute for evidence of the beams' structural integrity. All the warranty means is that the buyers will have a claim against the supplier if the beams fail.

Another potentially serious defect is the patio that allows water to collect. The water could cause problems with the home's foundation and could present a danger of injury. Further, the bow in the garage overhang could be a signal that all is not well structurally with the garage. Although there was evidence that the house passed county inspections, there was no evidence as to how the inspections were done or whether these defects were called to the inspectors' attention.

In *George Butkovich & Sons, Inc. v. State Bank* (1978), 62 Ill. App. 3d 810, this court reversed a finding that a builder had substantially performed in a workmanlike manner in constructing a house. In *Butkovich*, the builder failed to install water stops, wire mesh under the basement floor, or underground garbage cans; failed to recess glass blocks; failed to construct the project at the proper elevation; and was responsible for cold joints and honeycombs in the concrete. (*Butkovich*, 62 Ill. App. 3d at 812-14.) The court noted that its decision to reverse was based on both omissions from the contract and evidence of poor quality workmanship. *Butkovich*, 62 Ill. App. 3d at 814.

Similarly, in *Folk v. Central National Bank & Trust Co.* (1990), 210 Ill. App. 3d 43, this court held that the trial court's finding that a blacktop contractor substantially performed improvements to an automobile racing dragway was against the manifest weight of the evidence. There, the contractor applied an uneven layer of asphalt that was, on average, slightly below the depth called for in the contract. The uneven surface would cause drivers to experience "a washboard effect." (*Folk*, 210 Ill. App. 3d at 55.) There was testimony that portions of the track would have to be repaired or replaced. Moreover, a national drag racing association had called the dragway unsafe and had refused to sponsor further events there. (*Folk*, 210 Ill. App. 3d at 55.) However, there was also testimony tending to show that the defects in the dragway were relatively minor and that the track's condition improved with time. *Folk*, 210 Ill. App. 3d at 47-49.

Although the facts here are closer to *Butkovich* than to *Folk*, both cases are instructive. Here, as in both *Butkovich* and *Folk*, the project as completed shows numerous defects. Moreover, a number of the defects, especially the cracked load-bearing beams, can be considered serious problems. We believe the trial court's conclusion that the contractor proved that it substantially performed in a workmanlike manner is in error, in that a contrary conclusion plainly appears.

When a builder does not substantially perform under a contract, he is limited to claiming damages under a theory of *quantum meruit*. These damages are equal to the reasonable value of his services minus the amount of damages suffered by the buyers. (*Howard v. Jay*

(1990), 203 Ill. App. 3d 539, 544; *Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 673.) In this case, the contractor's *quantum meruit* claim was found to be moot because the contractor was awarded the contract price. On remand, *quantum meruit* damages should be considered, as should the issue of the buyers' acceptance, if any, of the contractor's performance. Further, our decision to reverse on the substantial performance issue obviates the need to discuss Sandra's claim that the trial judge should have allowed the buyers' architect to testify as an expert on the home's conformance to the building plans.

For the above reasons, we reverse the judgment of the circuit court of Du Page County and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

GEIGER and DOYLE, JJ., concur.