THE DEPARTMENT OF PUBLIC HEALTH, Plaintiff-Appellee, v. APRIL JACKSON, Defendant-Appellant.

Fourth District   No. 4—00—0123

Opinion filed April 10, 2001.

STEIGMANN, P.J., dissenting.

Gerald A. Goldman, Arthur R. Ehrlich, and Jonathan C. Goldman, all of Goldman & Ehrlich, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and A. Benjamin Goldgar, Assistant Attorney General, of counsel), for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiff, Illinois Department of Public Health (Department), brought this action against defendant, April Jackson, M.D., alleging that she had violated the terms of her scholarships under the Family Practice Residency Act (Act) (110 ILCS 935/1 through 10 (West 1998)) in that she had failed to practice medicine in a "[d]esignated [s]hortage [a]rea." 110 ILCS 935/3.07(d) (West 1998). The Department sought treble damages. See 110 ILCS 935/10 (West 1998). On January 14, 2000, the circuit court entered summary judgment in favor of the Department in the amount of $67,175, plus prejudgment interest of $14,911.16. Jackson appeals, arguing that she substantially performed her obligations under the scholarship agreements and that the imposition of treble damages on the facts of this case is contrary to public policy. We reverse and remand.

The Department presented the following facts in support of its motion for summary judgment. Jackson is a physician who received her medical degree from the University of Illinois Medical School at Peoria in 1989. While she was in medical school, Jackson and the Department entered into written contracts pursuant to the Act. Under those contracts, the Department paid the medical school $40,305 on Jackson's behalf for the three academic years prior to 1989.

■ Section 3.07(d) of the Act (110 ILCS 935/3.07(d) (West 1998)) defines an "eligible medical student" as one who "agrees to practice full-time in a [d]esignated [s]hortage [a]rea as a primary care physician one year for each year he or she is a scholarship recipient."

Jackson completed her residency in internal medicine on June 30, 1992. Thomas A. Yocom, the Department's coordinator of the Medical Student Scholarship Program, stated in an affidavit that "between 1986 and 1995, no proposal for practice in a designated shortage area was received by the affiant or the Department from April Jackson before she commenced medical practice in Illinois." Beginning April 1, 1994, Jackson practiced medicine at Holy Cross Family Medical Center (Holy Cross) in Chicago. Jackson left Holy Cross in October 1994 and began practicing at Chatham Health Associates (Chatham) in Chicago, continuing to practice at that location through March 31, 1997. Jackson accordingly practiced at Holy Cross and Chatham for three years. The Department filed this action on April 3, 1998. Jackson's practice at Holy Cross and Chatham was in a "primary care" specialty and was a "full-time" endeavor. Holy Cross and Chatham were located in a "designated shortage area" (110 ILCS 935/3.04 (West 1998)). However, Jackson did not obtain written approval from the Department prior to her commencement of medical practice, nor did Jackson practice medicine in Illinois between the June 1992 completion of her residency and the April 1994 commencement of her practice at Holy Cross. The record fails to account for Jackson's activities during that period.

The Department, in its motion for summary judgment, sought treble damages of $120,915. The Department stated, however, that "except for the defendant's failure to seek and obtain [the Department's] advance approval of her specific practice site or location, her 16 months of service would have partially fulfilled her contractual service obligation." Accordingly, the Department was willing to grant Jackson a credit of $53,740 for her 16 months of practice which fell within the first three years after her residency. The credit reduced the amount of damages to $67,175, and the trial court granted summary judgment in that amount.

The record does not reflect whether the Department was aware

that Jackson was working at Holy Cross or at Chatham. Nor does the record reflect whether the Department had any contact with Jackson while she was doing that work, or whether the Department was aware that Jackson expected credit for that work. The Department did not order Jackson to work at any location other than Holy Cross or Chatham. The record does not indicate why the Department waited until April 1998 to file this action.

The Department argues in its brief that Jackson breached her contract and that the Department was damaged in that "it was deprived of the medical services for which it bargained." The Department argues that Jackson was required to work in an area that the Department approved, not wherever she wanted, and that Jackson was required to begin her service within 30 days after her residency ended, not when she felt like it.

■ The Act lists among its purposes the providing of "a loan repayment program for physicians who will agree to practice in areas of the State demonstrating the greatest need for more professional health care." 110 ILCS 935/2 (West 1998). A scholarship recipient who fails to fulfill the practice requirement "shall pay to the Department a sum equal to [three] times the amount of the annual scholarship grant for each year the recipient fails to fulfill such obligation," and "shall have 30 days from the date on which that failure begins in which to enter into a contract with the Department that sets forth the manner in which that sum is required to be paid." 110 ILCS 935/10 (West 1998). The Department's regulations provide that "service shall be deferred by the Department until recipient completes a primary care residency; service shall begin no later than 30 days after completion." 77 Ill. Adm. Code § 590.240(b)(1) (1994). The Act does not contain that 30-day limitation, although it is clear the service is due upon completion of residency.

The Act bears some similarities to the National Health Service Corps (NHSC) scholarship program. 42 U.S.C. §§ 2541 through 254s (1988). Although the Act is in many ways unique, it is useful to consider cases decided under the federal statute.

There are certainly differences between the NHSC or the Act and a contract with a private lender. We should reject a construction of the statute which allows a scholarship recipient to simply rescind the contract and pay back the money. In the interest of servicing the policy goals of the statute, the service obligation was intended to be one not easily avoided. *United States v. Melendez*, 944 F.2d 216, 219 (5th Cir. 1991). The NHSC scholarship program is not intended as a mechanism solely to subsidize health profession education, but as a means to overcome a geographic maldistribution of health profession-

als. *Rendleman v. Bowen*, 860 F.2d 1537, 1541 (9th Cir. 1988). Prior written approval of a location is important to assure that the services are actually going to people who are in need and that health care is actually being given to the underserved. The Secretary of Health, Education, and Welfare (Secretary) must be able to retain control over where the scholarship recipients serve or the program is meaningless. The recipients cannot unilaterally, without proper approval, decide where they wish to serve if the program is to be effective. *United States v. Vanhorn*, 20 F.3d 104, 108 n.9, 114 (4th Cir. 1994).

It has been said that the conditions imposed upon an NHSC scholarship recipient arise from statutory directives, not from a negotiated agreement between the parties. *Rendleman*, 860 F.2d at 1541. "Statutory intent, therefore, is more relevant to the interpretation of these conditions than are common[-]law contract principles." *Rendleman*, 860 F.2d at 1541-42. NHSC scholarships are said to be analogous to grants in aid under the Hill-Burton Act, formally known as Title VI of the Public Health Services Act (42 U.S.C. § 291 (1988)), where the federal government gave money to the states to develop and improve hospital physical facilities and research, and the health care facilities were required to provide no-cost health services to the poor. *Vanhorn*, 20 F.3d at 111. The argument of the health care facilities that the Hill-Burton Act's requirement to provide no-cost services to the poor deprived them of freedom of contract was rejected because the grant-in-aid program was not much like a voluntary agreement negotiated between two parties. It was instead an exercise by the federal government of its authority under the spending power to bring about certain public policy goals. *American Hospital Ass'n v. Schweiker*, 721 F.2d 170, 182-83 (7th Cir. 1983).

It may be questioned whether NHSC scholarships issued on an individual basis are all that similar to health care grants in aid under the Hill-Burton Act. If the government chooses to enter into contracts with an individual, why should the individual be subject to the law of contracts, but the government not be? The *Rendleman* language "does not mean that the government and Becker did not have a contract, of course; the statute describes the scholarship agreement as a 'contract.' " *United States v. Becker*, 995 F.2d 779, 783 n.3 (7th Cir. 1993). Military enlistment contracts, also entered into pursuant to statute, are decided according to principles of traditional contract law. *Vanhorn* distinguished the military enlistment cases on the basis that they "do not arise under a detailed statutory scheme like the one governing NHSC scholarships." *Vanhorn*, 20 F.3d at 111. That argument is unavailing with the Illinois Act. The Illinois statutory scheme is nowhere near as detailed as the federal NHSC program.

The Fourth Circuit in *Vanhorn* held that ordinary contract principles did not apply to NHSC recipients, but it also addressed those principles in the case before it, determining there was no contract defense. *Vanhorn*, 20 F.3d at 112 n.19. The Fourth Circuit went on to stress that the inapplicability of contract principles did not leave the scholar without recourse. An appeal could be taken to the Secretary, who in proper circumstances could cancel, waive, or suspend the scholar's obligation. 42 U.S.C. § 254o(c)(3) (1988). The Secretary's action could be overturned by a court if arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *Vanhorn*, 20 F.3d at 112; see also *Melendez*, 944 F.2d at 219 (idea that contract principles do not apply "is not to say that the acts or omissions of the Secretary *** can never provide a basis for relief"). Relief is available "whenever compliance by the individual is impossible or would involve extreme hardship to the individual and if enforcement of such obligation with respect to any individual would be unconscionable." 42 U.S.C. § 254o(d)(2) (1988). There is no similar provision in the Illinois statute, but clearly the Department has the power in individual cases to take action to prevent injustice or undue hardship, which power may not be exercised arbitrarily. Because the Illinois statute does not set out any procedures for the exercise of discretion, no particular procedural steps must be taken to request an exercise of that discretion. *Cf. Vanhorn*, 20 F.3d at 112 (there was no agency action to review where no request had been made of the Secretary).

In *Rendleman*, the case that stated that statutory intent is more relevant to the interpretation of NHSC contracts than are common-law contract principles, the Ninth Circuit held that on remand the district court could consider whether Rendleman's services, which were not approved in advance and were in an area not designated as a shortage area until later, warranted a credit pursuant to section 245o(c)(3). *Rendleman*, 860 F.2d at 1544 n.8. *Vanhorn* indicated that other cases had reached a different conclusion, citing *United States v. Barry*, 904 F.2d 29, 31 (11th Cir. 1990) ("[t]he district court correctly decided that this statute as written did not provide for proration"). *Barry*, however, considered the statute prior to its amendment effective October 1, 1977. *Barry*, 904 F.2d at 30 & n.1. Since October 1, 1977, the statute has provided a formula allowing the United States to recover three times the amounts it had paid, plus interest, multiplied by number of months unserved divided by the number of months obligated. 42 U.S.C. § 254o(b)(1)(A) (1988). Under that formula, if an individual had served 35 of the 36 months for which he was obligated, he would be required to pay only 1/36 of the penalty. The Illinois Act clearly provides for proration. The Act provides a penalty, not for the

entire three years, but "for each year the recipient fails to fulfill such obligation." 110 ILCS 935/10 (West 1998). The Department, which was willing to grant a credit for 16 months of service, apparently sees no difficulty in granting credit for portions of a year. The question before us is not whether a partial credit is possible, but how much of a credit should be allowed.

The unconscionability credit approach is similar to the doctrine of substantial performance, under which a contracting party who has failed to fully perform the contract, and is therefore in breach, may nevertheless recover the contract price, subject to any deductions by way of setoff for completing and correcting the work, if he has substantially performed the contract. *Fieldcrest Builders, Inc. v. Antonucci*, 311 Ill. App. 3d 597, 610, 724 N.E.2d 49, 60 (1999). Absent substantial performance, the defaulting party is entitled only to the *quantum meruit. Fieldcrest*, 311 Ill. App. 3d at 610, 724 N.E.2d at 60.

In *Vanhorn*, the doctor reported to her first assignment, but that employer was unable to pay her, and she reported to a second assignment based on the oral approval of her project officer at the Public Health Service. When the Department of Health and Human Services learned the specifics of her move, she was told the move was unacceptable and that she was in default of her obligations. The doctor continued her employment but eventually signed a forbearance agreement, admitting her liability and agreeing to serve another three years at a location selected by the Secretary. When the location was selected, Dr. Vanhorn refused to report. The Fourth Circuit affirmed judgment against Dr. Vanhorn, including treble damages, noting that "Dr. Vanhorn was reminded of the escalating penalties, and she was given several opportunities to satisfy her obligation through service." *Vanhorn*, 20 F.3d at 113; see also *United States v. Hatcher*, 922 F.2d 1402, 1405 (9th Cir. 1991) ("The NHSC repeatedly offered Hatcher amnesty if he would agree to fulfil his obligation, but he refused each time"). The *Vanhorn* court did not decide whether the doctor was entitled to a partial credit for her self-chosen services, because Dr. Vanhorn did not raise the issue before the agency or the court below. *Vanhorn*, 20 F.3d at 114. That was true even though "Dr. Vanhorn may indeed have served an underserved population." *Vanhorn*, 20 F.3d at 114.

The federal cases which have allowed a treble damages award have done so where the recipient has been directed to report to a particular location, has refused to report, and has been given numerous opportunities to comply. As far as we can tell from the sparse facts presented on this motion for summary judgment, nothing like that exists in this case. The Department argues that it has been damaged by

the recipient's failure to obtain advance approval of the practice site and by the recipient's failure to commence work within 30 days of the completion of residency. On these facts, it has not been established that the Department has been damaged at all, let alone in an amount three times the amount of the funds advanced.

It is possible the Department was harmed by Jackson's failure to obtain advance approval of the practice site, but there is no evidence that the Department would not have approved that site or that it wanted Jackson to report to some other site. The Department does not deny that Jackson's "services [were] actually going to the people who are in need and that health care [was] actually being given to the underserved." *Vanhorn,* 20 F.3d at 108 n.9. The Department is willing to give Jackson a credit for work at the practice site so long as it was performed within three years of her completion of her residency. Why is it important that service begin exactly 30 days after completion of residency, in every case? The Act does not contain any such requirement. The federal cases are replete with instances where service did not begin immediately after the residency, and no case has indicated there is a problem with service which does not commence within 30 days. The Department could have been harmed if it had made a commitment for Jackson to begin at a specific location at a specific time, but there is no evidence that it did so. The Department's complaints appear to be technical ones.

Another factual issue exists in this case, completely apart from any contract defenses. That issue is whether the Department is estopped by its conduct. The Department argues it has established that Jackson has breached her contract, and therefore it is entitled to treble damages as a matter of law. The Department is willing to give Jackson a 16-month credit, but it insists that she has no right to that credit and that any credit is solely in its discretion. Judgment as a matter of law for the Department in this case would give the Department unwarranted absolute power. Determination that a recipient is in breach does not conclude the case but only begins the inquiry of what damages are appropriate. A recipient could breach his contract in a variety of ways, ranging from beginning his service a day late to refusing to ever report. Assume a situation where a doctor is obligated to give a year of service, but begins that service a day late. Assume further that the Department makes no objection and allows the doctor to render the year of service, but it then files suit against the doctor for treble damages in the full amount. It seems clear that the Department would be estopped by its conduct in that situation, and there would be issues of fact requiring trial. Even the federal cases relied upon by the Department conclude that the NHSC is not an absolute

liability statute and that service which is technically not in compliance with the NHSC contract may nonetheless entitle the participant to a credit. See, *e.g.*, *Vanhorn*, 20 F.3d at 112 ("appeal may be made to the Secretary \*\*\*, who in proper circumstances may cancel, waive, or suspend the scholar's obligation").

■ Reluctance to apply the doctrine of estoppel against the State has been motivated by the concern that doing so may impair the functioning of the State in the discharge of its public functions and that valuable public interests may be jeopardized or lost by the negligence, mistakes, or inattention of public officials. *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 431-32, 665 N.E.2d 795, 806 (1996). That concern is not present when the State chooses to deal with individuals by means of contracts. No public interest is impinged where the State, dealing with individuals with whom it has a contract, grants a deserved credit. That concern is likewise not present where the conduct of the agency itself is involved, not some unauthorized act of an agency employee.

■ The Ninth Circuit has a test that it applies as a threshold matter before deciding whether the traditional elements of estoppel are present. One who invokes the doctrine of estoppel against the government must establish affirmative misconduct going beyond mere negligence, that the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage. *Hatcher*, 922 F.2d at 1410, 1411 n.12. *Hatcher* indicated that relief would be available where there is an ongoing active misrepresentation. *Hatcher*, 922 F.2d at 1411, citing *Watkins v. United States Army*, 875 F.2d 699, 708 (9th Cir. 1989); see also *Drury Displays, Inc. v. Brown*, 306 Ill. App. 3d 1160, 1165-66, 715 N.E.2d 1230, 1234 (1999) (granting of two permits). If the Department was aware that plaintiff was working at Holy Cross and Chatham, in the expectation that that work would satisfy her obligation, and did not express disapproval of that work, the Department could be estopped to declare a default or to seek treble damages.

Jackson challenges the treble damages provision. A similar provision has been upheld as applied to NHSC scholarship recipients. The history of that provision is discussed in *Vanhorn*. Prior to 1978, a defaulting NHSC scholarship recipient was required to pay only the amount awarded plus interest. *Vanhorn*, 20 F.3d at 113. The pre-1978 statute in effect gave the recipient the option to eliminate the service requirement and convert the agreement to a standard scholarship loan. The policies underlying the statute were not served by such an option.

■ The federal courts have held that given the difficulty in

ascertaining damages suffered by the loss of a trained physician for a three-year period in a medically underserved area, treble damages are a " 'fair and reasonable attempt to fix just compensation in the event of breach.' " *Vanhorn*, 20 F.3d at 113, quoting *United States v. Swanson*, 618 F. Supp. 1231, 1243-44 (E.D. Mich. 1985). The cost of employing a replacement physician could be used to ascertain damages, but by definition we are dealing with situations where replacement physicians are unavailable. We accept the proposition that treble damages are appropriate in these cases, in situations where there has been a substantial failure to perform. Where the failure to perform has not been so substantial, however, where the recipient has come close to performance, we reject the proposition that treble damages are a "fair and reasonable attempt to fix just compensation."

■ ■ Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998). Our review of an order granting summary judgment is *de novo*. *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424, 706 N.E.2d 460, 463 (1998). In the present case, it is clear that Jackson breached her contract with the Department. However, there are genuine issues of fact whether (1) the Department was damaged by that breach, (2) Jackson should be entitled to any further credits, (3) any treble damages would be appropriate, and (4) the Department is estopped by its conduct from seeking any damages. We reverse the judgment of the trial court and remand for further proceedings consistent with this decision.

Reversed and remanded.

MYERSCOUGH, J., concurs.

PRESIDING JUSTICE STEIGMANN, dissenting:
I respectfully dissent.

The majority declines to follow the federal cases holding that ordinary contract principles should not govern when, as here, the terms of the agreement between the parties are set by statute. The majority points out that the *Vanhorn* court described the contracts at issue as being governed by a "comprehensive statutory scheme," and argues that the Illinois Act is "nowhere near as detailed" as the NHSC program. 321 Ill. App. 3d at 232. In my view, (1) the NHSC scholarship program and the Act employ the same means to reach virtually identical goals, and (2) the federal cases on point are well reasoned

and persuasive. Accordingly, the majority errs by not interpreting the Act as the federal courts have viewed the NHSC scholarship program.

The NHSC scholarship program was created to address the problem of a declining number of doctors available to serve in rural areas by providing a generous scholarship program for students who would agree to serve in areas that, in the judgment of the Secretary of Health and Human Services, had difficulty attracting health professionals. *Vanhorn*, 20 F.3d at 107. Under the NHSC scholarship program, the NHSC grants scholarships to medical students who sign a contract promising to serve in a "Health Manpower Shortage Area" (HMSA) for a term equal in duration to the number of years for which they received scholarship support. *Hatcher*, 922 F.2d at 1404. Scholarship recipients may apply for a deferment to complete a residency program. The Secretary of the NHSC has authority to designate geographic areas as HMSAs and assign scholarship recipients to them. Scholarship recipients can apply to be assigned to specific HMSAs but are not guaranteed assignment to the HMSA they request. *Hatcher*, 922 F.2d at 1404. A scholarship recipient who defaults under the NHSC program is required to pay stipulated damages of triple the dollar value of the scholarship, plus interest. *Hatcher*, 922 F.2d at 1405.

In cases where the NHSC has filed suit against a scholarship recipient for his failure to fulfill his duty to serve at a HMSA, federal courts have held that the conditions imposed on the scholarship recipient arise from statutory directives, not from a negotiated agreement between the parties, and therefore, contract principles do not govern. See *Vanhorn*, 20 F.3d at 112 (substantial compliance, economic duress, and estoppel are not valid defenses under the statutory scheme creating the NHSC scholarship program); *United States v. Bloom*, 925 F. Supp. 426, 434 (E.D. La. 1996) (even though the relationship between the scholar and the NHSC is evidenced by a contract, breach of contract, impossibility, and accord and satisfaction defenses are not applicable because the relationship is statutory), *aff'd*, 112 F.3d 200 (5th Cir. 1997); *Becker*, 995 F.2d at 783 (statutory intent is more relevant to interpretation of the conditions of a NHSC scholarship program contract than are principles of contract law); *Melendez*, 944 F.2d at 219 (contract principles do not apply because conditions imposed on a NHSC scholarship recipient arise from statutory directives, not a negotiated agreement).

In *Vanhorn*, the court explained that the NHSC scholarship program is analogous to grant-in-aid programs under which the federal government provides money for specific purposes and places conditions on the recipient. Such programs are an exercise of the federal government's spending power to bring about a public policy goal—

namely, the provision of medical services to underserved areas. *Vanhorn*, 20 F.3d at 111-12. Under such a statutory scheme, conditions for the receipt of scholarship funds do not arise from a negotiated agreement between the parties but are provided for in the statute. Statutory intent, therefore, is more relevant to the interpretation of the conditions than common-law contract principles. See *Hatcher*, 922 F.2d at 1406, quoting *Rendleman*, 860 F.2d at 1541-42.

In light of the similarities between the NHSC scholarship program and the language of the Act, I conclude that the Illinois General Assembly did not intend for contract principles to govern the interpretation of the relationship between the Department and a scholarship recipient. I therefore would hold that Jackson's substantial performance defense does not raise an issue of fact, and the trial court did not err by granting summary judgment in the Department's favor. The Department proved (1) the contract, (2) its funding of Jackson, and (3) that Jackson did not perform her obligation to commence service in an approved designated shortage area within 30 days of completing her residency in accordance with the Illinois Administrative Code and the Act. See *Vanhorn*, 20 F.3d at 111. Therefore, as a matter of law, the Department is entitled to summary judgment and damages pursuant to section 10 of the Act (110 ILCS 935/10 (West 1998)).