**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210349-U

Order filed October 19, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| M&J UNDERGROUND, INC. | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| Plaintiff-Appellant, | ) | Kankakee County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-21-0349 |
| | ) | Circuit No. 19-L-157 |
| VILLAGE OF BOURBONNAIS, | ) | |
| | ) | Honorable Adrienne W. Albrecht, |
| Defendant-Appellee, | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court.
Justices Hauptman and Peterson concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court's order granting defendant's motion to dismiss plaintiff's second amended complaint with prejudice is reversed. The matter is remanded to the circuit court for further proceedings.

¶ 2     Plaintiff, M&J Underground, Inc., executed a construction contract with defendant, Village of Bourbonnais (the "Village"), after successfully bidding on the Village's public improvement project. Performance of the contract imposed additional unanticipated costs on M&J for managing preexisting but unknown soil and water conditions on the project site. After multiple delays and monetary disputes, M&J informed the Village that it was suspending work

on the project. The Village terminated the contract and hired a new contractor. M&J brought suit in the circuit court for breach of contract. After allowing two amendments, the court dismissed M&J's second amended complaint with prejudice. M&J now appeals, specifically challenging the dismissal of two counts in the second amended complaint.

¶ 3                                                   FACTS

¶ 4         On June 8, 2018, M&J entered into a written contract with the Village to provide underground utility construction services in connection with an improvement project. M&J was chosen as the project contractor after submitting a bid proposal and contract offer, which the Village accepted. During the bidding process, there was no easement that allowed either the Village or M&J on the designated project site. Instead, Tyson Engineering, Inc., prepared soil boring specifications for the Village. The boring results were not reflective of the actual soil conditions because they had been taken at elevations significantly higher than the surface of the project site and did not show any water conditions for the site specified.

¶ 5         Under the contract, M&J would furnish labor, equipment and materials for its construction and installation of a lift station, sanitary sewer along US Route 45/52 (the "highway"). The work was to be completed by May 15, 2019. The contract also expressly imposed certain requirements and restrictions on M&J in relation to its performance of the work: (1) M&J had sole responsibility for knowledge of the ground conditions on the project site, including doing soil borings if necessary; (2) M&J could not rely on any soil borings provided by the Village as a convenience, nor could the need to obtain easements be used to excuse delays; (3) M&J had full control over the means and methods of performing the job; and (4) any extra work that was not approved in advance by a written change order would not be compensated. The completed work to be performed was valued at $1.8 million.

¶ 6    After M&J's bid and proposal were accepted, the contract was prepared by the Village and executed by the parties, M&J immediately began encountering multiple impediments to its performance. At the outset, work on the project was delayed for six months because the Village had not secured an easement critical to its performance. The Village eventually secured authorization for M&J to begin performance, and the work started on January 9, 2019. Soon after, performance was halted again after M&J discovered an unforeseen subsurface water condition. This condition required an engineering review of the soil and hydraulic conditions, the securing of an excavation permit from the Illinois Department of Transportation ("IDOT"), and the performance of soil boring tests. These unanticipated activities imposed additional costs on M&J and further delayed performance on the project.

¶ 7    The project continued to be plagued by problems and the delays persisted. During the delays, M&J continued to provide the labor, equipment, supplies and materials necessary to perform the work as required by the contract. It also continued discussions with representatives of the Village who repeatedly told M&J that its change orders were being processed and led M&J to believe that the Village would pay for the additional costs and expenses related to the water conditions. On March 4, 2019, the Village finally signed Change Order No. 1, approving payment to M&J of $94,100 for these costs accrued in January and February 2019 due to the water condition.

¶ 8    Assured that its costs would be covered, M&J continued performing under the contract. A portion of the work required it to bore under the highway. The contract provided that boring would be performed by a method known as "augered [*sic*] jack and bore," which required installing horizontal casing platforms under the highway and simultaneously excavating the soil with rotating cutting head. Because of the water conditions, M&J believed that this method

3

would result in a collapse of and damage to the highway. It retained a soil engineer to review the conditions and advise it on how to proceed. The engineer determined that the project could not be performed using the method prescribed in the contract. M&J advised the Village and contacted IDOT, which stated that the permit issued to the Village only allowed excavation by the augered jack and bore method. IDOT explained that it was not aware of the water conditions when it issued the permit and advised M&J that no dewatering would be allowed under the highway. M&J advised the Village of this decision. The Village explained that the choice of means and methods of completing the project was up to M&J, which would be responsible for any additional cost for completing the project.

¶ 9　　　　On September 30, 2019, the Village informed M&J that going forward, M&J would be solely responsible for any additional costs in connection with performing its contractual obligations. M&J ultimately ceased performance on the project and the Village advised M&J on October 30, 2019, that it would be retaining a replacement contractor. M&J filed its initial complaint, alleging breach of contract. The Village filed a motion to dismiss the initial complaint and M&J twice amended the complaint. M&J's second amended complaint is the one at issue in this appeal. It alleged six counts including a breach of contract claim (count I) and a request for accounting (count VI).

¶ 10　　　　In count I, M&J alleged that the Village "breached the covenant of good faith and fair dealing by making certain representations but then acting in a completely contrary manner." It contended that the Village's representative told M&J that change orders were being processed and advised M&J to proceed with performance. M&J also contended that the Village failed to provide it with accurate information regarding soil conditions and boring requirements. M&J argued that inaccurate boring information resulted in the delays. In count I, M&J claimed that

4

because of the Village's behavior, M&J incurred (1) labor and equipment costs of $583,354; (2) delay costs of $209,658.80; and (3) costs for additional time and lost production of $34,000.

¶ 11 In count VI, M&J requested that the circuit court grant it an accounting of certain accounts. Specifically, M&J listed accounts for three different entities: (a) those of M&J to prove the purchase and delivery of materials to the construction site; (b) those of the Village; and (c) those of the replacement contractor hired by the Village. M&J contended that an accounting is necessary because the "accounts [are] of a complex nature." M&J alleged that certain equipment and materials were delivered to the worksite and M&J received no payment for them. M&J argued that an accounting is necessary to determine what happened to the delivered materials.

¶ 12 The Village filed a motion to dismiss the second amended complaint. It argued that M&J failed to establish a breach of contract and that M&J could not maintain an equitable claim of accounting in a case raising a legal claim. The circuit court granted the motion and dismissed the second amended complaint with prejudice. M&J now appeals the circuit court's dismissal.

¶ 13                                                      ANALYSIS

¶ 14 A motion to dismiss pursuant to section 2-615 attacks the sufficiency of the complaint and raises the question of whether the complaint states a claim upon which relief can be granted. *Tielke v. Auto Owners Insurance Co.*, 2019 IL App (1st) 181756, ¶ 22. The resolution of the motion involves only a question of law, and therefore this court's review is *de novo*. *Id.* This court will affirm the dismissal based on the pleadings only if we find " 'no set of facts can be proven which would entitle the plaintiff to the relief sought.' " *Vogt v. Round Robin Enterprises, Inc.*, 2020 IL App (4th) 190294, ¶ 14 (quoting *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 29 (2003)). On appeal, M&J challenges the dismissal of count I and count VI of the second amended complaint, arguing that it alleged sufficient facts stating a cause of action for breach of contract

5

and for an accounting. For the reasons that follow, we reverse the dismissal order and remand the matter for further proceedings.

¶ 15                    A. M&J's Breach of Contract Claim

¶ 16    To prevail on a breach of contract claim, M&J must plead and prove that: (1) a contract exists; (2) it performed its obligations under the contract; (3) the Village breached the contract; and (4) it sustained damages as a result of that breach. *International Supply Co. v. Campbell*, 391 Ill. App. 3d 439, 450 (2009). The parties agree that a contract existed. However, they disagree on whether M&J performed its contractual obligations. M&J argues that it substantially performed its obligations until unanticipated water conditions required additional costs and rendered performance impracticable. In Illinois, " '[s]ubstantial performance of a contract means performance in all the essential elements necessary to the accomplishment of the purpose of the contract.' " *W.E. Erickson Construction v. Congress-Kenilworth Corp.*, 115 Ill. 2d 119, 126 (1986) (quoting *People ex rel. Peterson v. Omen*, 290 Ill. 59, 65 (1919)). The question of whether a party has substantially performed under the contract is a question of fact. *Evans & Associates, Inc. v. Dyer*, 246 Ill. App. 3d 231, 240 (1993).

¶ 17    The contract required M&J to furnish labor, equipment and materials for the construction and installation of a sanitation sewer station. Relevant to the issue of substantial performance, the contract stated that M&J had full control over the means and methods of performing the work necessary for completing the project. Immediately after performance began, M&J determined that water conditions under the highway required M&J to perform a portion of the work by boring under the highway. Performance was, however, halted because the contract required that boring would be performed by the "augered jack and bore," which would result in a collapse of and damage to the highway.

6

¶ 18    Performance had begun offsite and continued until M&J was denied access to the project site because the Village failed to secure a critical easement. Once the easement was secured, performance resumed and was not halted again until the water conditions imposed further engineering difficulties and associated costs. M&J advised the Village of the circumstances and kept it informed of the developments. M&J also sought the Village's advice in determining how to proceed. Throughout their discussions, the Village repeatedly led M&J to believe that the Village would pay for the additional costs and expenses related to the water conditions.

¶ 19    The Village contends that it did not breach its obligations because M&J had full control over the means and methods of performing the job. However, M&J never had full control over the methods required for complete performance. The contract—and the Village's independent agreement with IDOT—prescribed the "augered jack and bore" method for completing the installation. In addition, the Village contends that M&J had sole responsibility for knowing the site's soil conditions and could not rely on information provided to it as a convenience. M&J argues it did not have access to the project site until after a critical easement was obtained, and it had no option but to rely on the specifications from the Village's engineering consultants. When the soil conditions made the prescribed method dangerous, IDOT informed M&J that the Village was limited to this single, impracticable boring method. The company notes that IDOT also prohibited M&J from dewatering the soil along the highway.

¶ 20    In light of these material factual disputes, we cannot say that there is no set of facts that could state a claim for breach of contract which, if proven, would entitle M&J to relief. We, therefore, conclude that the circuit court erred in dismissing count I of the second amended complaint with prejudice.

¶ 21                                B. M&J's Accounting Claim

7

¶ 22    We now turn to M&J's cause of action for accounting of the Village's accounts and documents. To state a cause of action for an accounting, " 'the complaint must establish that there is no adequate remedy at law and one of the following: (1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature.' " *Tufo v. Tufo*, 2021 IL App (1st) 192521, ¶ 93 (quoting *Landers v. Fronczek*, 177 Ill. App. 3d 240, 245 (1988)). M&J contends that accounting is required because there is a need for discovery. The Village responds that discovery is not necessary because M&J alone knows what was delivered and what it has not been paid for. In short, the Village argues that only the plaintiff's accounts need to be examined to determine the existence of unpaid receivables.

¶ 23    In its second amended complaint, M&J alleged that it ordered and paid for certain equipment and materials, which were delivered to the worksite and for which M&J received no payment from the Village. M&J does not know whether the Village has incorporated those materials into the improvements relating to the project or whether replacement materials were purchased and substituted. Regardless, M&J alleged that the materials and supplies that were delivered to the project site have never been paid for by the Village. In order to assess and support the validity of any claim for payment, M&J needs to know what the Village has done with those materials. In light of these material allegations, we cannot say that there is no set of facts that could state a claim for accounting which, if proven, would entitle M&J to the relief it seeks. We, therefore, conclude that the circuit court erred in dismissing count VI of the second amended complaint with prejudice.

¶ 24                                         CONCLUSION

¶ 25       The judgment of the circuit court of Kankakee County is reversed and the matter is remanded for further proceedings.

¶ 26       Reversed and remanded.